PRESTON GENE HOUPE, Plaintiff v. CITY OF STATESVILLE, a municipal corpora-
tion; JACK KING, in his official capacity as City Manager; ROBERT WARSHAW,
individually and in his former official capacity as Chief of Police; DALTON Z.
BROWN, in his official capacity as Assistant Chief of Police and formerly Acting
Chief of Police; EDWARD JARVIS, individually and in his official capacity as
Lieutenant and formerly as Acting Assistant Chief of Police; GREGORY STONE,
in his official capacity as an Internal Affairs Investigator, and MICHAEL
GRANT, in his official capacity as a criminal investigator, Defendants

No. COA96-1272

(Filed 20 January 1998)

**1. Municipal Corporations § 413 (NCI4th)— police officers—
investigation and discipline—governmental function**

The actions of the City and its officials in investigating and
disciplining a police officer who was accused of criminal activity
were within the rubric of "governmental functions" for govern-
mental immunity.

**2. Municipal Corporations § 445 (NCI4th)— police officer—
wrongful termination—waiver of immunity—insurance
exclusionary clause**

In an action by a police officer for wrongful termination, the
trial court did not err in denying defendants' motion for judgment
on the pleadings where one of the City's two insurance clauses
excluded emotional distress and mental anguish and plaintiff
admitted in interrogatories that he sought recovery on those
bases. Consideration of interrogatories is not proper in a mo-
tion for judgment on the pleadings and the record does not
reflect the trial court's consideration of interrogatories; more-
over, in view of the requirement that insurance exclusions be
strictly construed, it cannot be concluded that defendants clearly
demonstrated that governmental immunity was not waived by
purchase of that policy.

**3. State § 27 (NCI4th)— dismissal of police officer—breach
of contract—sovereign immunity—not applicable**

The trial court did not err in denying defendants' motion for
judgment on the pleadings as to a breach of contract claim where
the complaint alleged that the City's charter, ordinances and writ-
ten policies created an agreement whereby plaintiff would not be
terminated except for "good cause." Sovereign immunity is not
applicable to breach of contract claims and plaintiff met this

requirement by alleging that the City's charter, ordinances and written polices created an agreement; whether the charter, ordinances and written policies became a part of the contract is not an issue properly adjudicated on the pleadings.

**4. Municipal Corporations § 453 (NCI4th)— police officer—dismissal—employment contract—judgment on the pleadings**

The trial court erred in an action arising from the dismissal of a police officer by denying defendants' motion for judgment on the pleadings as to breach of contract claims with respect to the individual defendants where plaintiff alleged that the City and not the individuals had hired him.

**5. Municipal Corporations § 445 (NCI4th)— dismissal of police officer—libel and slander action—not covered by insurance—immunity not waived**

Governmental immunity was not waived by the City's purchase of two insurance policies and the trial court erred by denying defendants' motion for judgment on the pleadings as to claims for libel and slander *per se* against defendant Jarvis in his official capacity arising from the dismissal of a police officer where Jarvis, in his role as a supervisor, prepared and disseminated a memo which contained defamatory statements. One policy excludes claims for libel and slander and the other excludes coverage for employment-related defamation.

**6. Libel and Slander § 26 (NCI4th)— slander—grand jury testimony—privileged**

The trial court erred in an action arising from the dismissal of a police officer by denying defendants' motion for judgment on the pleadings regarding plaintiff police officer's slander claim against defendant police officer Grant arising from Grant's grand jury testimony. Defamatory statements made by a witness in a judicial proceeding fall within the absolute privilege rule.

**7. Municipal Corporations § 445 (NCI4th)— dismissed police officer—malicious prosecution and false arrest claims—governmental immunity—insurance exclusion—employment claims**

The trial court properly denied defendants' motion for judgment on the pleadings as to plaintiff police officer's malicious prosecution and false arrest claims where the claims against the

City and its police officers were not precluded by governmental immunity since one of the City's insurance policies excludes claims arising out of and in the course of employment but plaintiff's complaint alleged that the events constituting his injuries happened when he was no longer employed by the City.

**8. Municipal Corporations § 445 (NCI4th)— dismissal of police officer—immunity—insurance exclusion—operational law enforcement**

The trial court did not err by denying defendants' motion for judgment on the pleadings on a claim for negligent supervision and negligent retention against the City and several of its police officers where governmental immunity was not waived. One of defendant's insurance policies excluded causes of action arising out of "operational law enforcement function" but did not provide a definition for the terminology. Exclusionary clauses are strictly construed to provide coverage and defendants did not show that they are entitled to judgment as a matter of law.

**9. Constitutional Law § 85 (NCI4th)— dismissal of police officer—§ 1983 claim—custom or policy of city not alleged**

The trial court erred in denying defendants' motion for judgment on the pleadings as to a 42 U.S.C.§ 1983 claim arising from the dismissal of a police officer where plaintiff failed to allege that he was harmed pursuant to a custom or policy of the defendant City.

**10. Municipal Corporations § 360 (NCI4th)— dismissal of police officer—violation of N.C.G.S. § 160A-168—not a civil action**

The trial court erred in an action arising from the dismissal of a police officer by denying defendants' motion for judgment on the pleadings as to plaintiff's claim that two of the defendants violated N.C.G.S. § 160A-168 by publishing information from an Internal Affairs investigation to other officers. That statute does not create a civil cause of action.

**11. Labor and Employment § 90 (NCI4th)— dismissed police officer—N.C.G.S. § 14-355—punitive damages claim against City—judgment on the pleadings**

The trial court erred by denying defendants' motion for judgment on the pleadings in an action alleging that a police chief intentionally interfered with plaintiff's employment opportunities

**HOUPE v. CITY OF STATESVILLE**

[128 N.C. App. 334 (1998)]

by written and oral publication of false and erroneous information in violation of N.C.G.S. § 14-355. The statute clearly authorizes a cause of action for "penal," or punitive damages, a cause of action against an officer in his official capacity is essentially a claim against the City, and punitive damages may not be recovered against a municipality absent statutory authorization.

12. **Municipal Corporations § 413 (NCI4th)— dismissal of police officer—conspiracy—municipal corporation—not a party**

The trial court erred in an action arising from a police officer's dismissal by denying defendants' motion for judgment on the pleadings as to plaintiffs's claim that defendants as employees conspired to deprive him of his employment, to deprive him of a Board hearing and to bring criminal charges against him. A cause of action against an officer in his official capacity is essentially a claim against the City, the general rule is that an municipal corporation cannot in its sovereign or municipal capacity be a party to a conspiracy, and plaintiff's complaint did not contain an allegation that the asserted conspiracy fell outside this general rule.

Appeal by defendants from order filed 6 September 1996 by Judge Zoro J. Guice, Jr., in Iredell County Superior Court. Heard in the Court of Appeals 21 May 1997.

*Eisele & Ashburn, P.A., by John D. Greene, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by Allan R. Gitter and Jack M. Strauch, for defendants-appellants.*

JOHN, Judge.

Defendant City of Statesville (the City) and co-defendants City Manager Jack King (City Manager King), Statesville police officers former Chief Robert Warshaw (Chief Warshaw), Assistant Chief of Police Dalton Z. Brown (Brown), Investigations Lieutenant Edward Jarvis (Jarvis), Internal Affairs Investigator Gregory Stone (Stone), and criminal investigator Michael Grant (Grant) appeal an order of the trial court denying their motion for judgment on the pleadings. We affirm that order in part and reverse in part.

On 21 June 1995, plaintiff, a Statesville police officer, filed suit against defendants alleging eleven causes of action, including, *inter*

*alia,* wrongful termination, breach of contract, libel, slander, malicious prosecution, false arrest, and violation of civil rights. Chief Warshaw and Jarvis were sued both individually and in their official capacities, while City Manager King, Brown, Stone and Grant were sued solely in their official capacities.

Pertinent factual information as alleged in plaintiff's complaint included the following: Sometime prior to December 1993, plaintiff complained "to third persons employed with the City's Police Department" (the Department) that a "double standard" existed between the disciplinary treatment of high-ranking officers, including Jarvis, and low-ranking officers, with the former being given preference. Chief Warshaw responded by threatening to terminate plaintiff's employment if he made further accusations regarding the alleged impunity of Jarvis and others in the Department.

In January 1994, Jarvis reported to Chief Warshaw that plaintiff had been engaged in "certain off duty/patrol assistance activities" on 27 December 1993 which, according to Jarvis, may have included criminal activity. Chief Warshaw assigned Jarvis to conduct an internal investigation into plaintiff's 27 December 1993 activities, notwithstanding the Chief's knowledge that Jarvis harbored personal prejudice against plaintiff. Stone was assigned to assist Jarvis.

According to plaintiff's complaint, Jarvis and Stone improperly conducted their investigation into plaintiff's conduct, failing to interview witnesses or develop physical evidence in a thorough manner. The pair also directed plaintiff to submit to a recorded and videotaped interrogation without the presence of legal counsel, during which inquiry Jarvis misrepresented evidence and statements of witnesses. Although Jarvis subsequently concluded there existed no probable cause to suspect criminal activity on the part of plaintiff, Jarvis wrote and published to Chief Warshaw and others a report that plaintiff had attempted to break into one business and had actually broken into another during the early morning hours of 27 December 1993.

On 28 January 1994, Chief Warshaw terminated plaintiff's employment in retaliation for plaintiff's complaints about double standards within the Department. Although the City's charter, ordinances and policies specified that non-probationary Department employees possessed the right to appeal termination to the City's Civil Service Board (the Board), plaintiff was afforded no opportunity

to pursue such an appeal. The City, by and through the Board, City Manager King, Chief Warshaw and Jarvis, conspired to deny plaintiff's right to a hearing by asserting he was merely a probationary employee. Notwithstanding the City's denial of a hearing, plaintiff tendered, under the City's charter and Board policy, timely written notice of appeal of his termination. Immediately upon receipt thereof, Chief Warshaw, in an attempt to intimidate plaintiff into abandoning his appeal, assigned Grant to conduct a criminal investigation concerning plaintiff's 27 December 1993 activities. On 23 February 1994, Grant reported the findings of his inquiry to Chief Warshaw and Jarvis. No criminal charges were brought against plaintiff at that time.

Seeking to establish his status as a non-probationary employee, plaintiff filed a declaratory judgment action 18 February 1994 in Iredell County Superior Court. On 11 July 1994, approximately one month prior to the scheduled trial date for that case, Jarvis (then Acting Assistant Chief of Police) instructed Grant to testify before the Iredell County grand jury regarding his investigation of the events of 27 December 1993. Following Grant's testimony, the grand jury issued two indictments against plaintiff, and the latter was subsequently arrested 13 July 1994 and subjected to significant negative publicity in the local media.

Thereafter, on 26 August 1994, a jury in plaintiff's declaratory judgment action returned a verdict in plaintiff's favor, determining he indeed qualified as a non-probationary employee. The Board consequently conducted a hearing 28 November to 8 December 1994, following which the panel determined plaintiff was unjustifiably terminated and reinstated him as a police officer with the City. Early in 1995, the local District Attorney dismissed the criminal charges pending against plaintiff, citing the Board's findings.

As noted above, plaintiff initiated the instant action 21 June 1995. Defendants filed answer denying the essential allegations of the complaint and asserting, *inter alia,* the defense of governmental immunity. Defendants thereafter filed an amended answer, and the City and the co-defendants sued in their official capacities (hereinafter collectively "defendants," excluding Chief Warshaw and Jarvis individually) subsequently moved for judgment on the pleadings (defendants' motion) 8 March 1996. Defendants' motion was denied in an order filed 6 September 1996, and defendants timely appealed to this Court.

A party moving for judgment on the pleadings admits:

> (1) the truth of all well-pleaded facts in the non-movant's pleading, together with all permissible inferences to be drawn from such facts; and (2) the untruth of his own allegations in so far as they are controverted by the non-movant's pleading.

*Hedrick v. Rains*, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283, *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). Judgment on the pleadings is not favored in the law because it is both summary and final. *Id.* The movant is held to a strict standard to show that no material issue of fact exists and that he or she is clearly entitled to judgment. *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). While advancing a multiplicity of arguments, defendants in the main contend the trial court properly determined there was no material issue of fact regarding plaintiff's claims because his complaint revealed each was barred under the doctrine of governmental immunity.

Although defendants' appeal of the trial court's order denying defendants' motion is interlocutory,

> we have held that orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right.

*Hedrick*, 121 N.C. App. at 468, 466 S.E.2d at 283; *see also Whitaker v. Clark*, 109 N.C. App. 379, 381, 427 S.E.2d 142, 143, *disc. review* and *cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993). We therefore entertain defendants' appeal to the extent it is based upon the defense of governmental immunity. Moreover, where it would be in the interests of judicial economy to do so, *see Liggett Group v. Sunas*, 113 N.C. App. 19, 24, 437 S.E.2d 674, 678 (1993) (this Court may entertain an interlocutory appeal when doing so "would expedite the administration of justice"), we will in our discretion address defendants' alternative arguments.

[1] Governmental immunity shields municipalities and the officers or employees thereof sued in their official capacities from suits based on torts committed while performing a governmental function. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). This Court has previously held that the provision of police services, *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc. review denied*, 322 N.C.

834, 371 S.E.2d 275 (1988), and the training and supervision of police officers, *Lyles v. City of Charlotte*, 120 N.C. App. 96, 100, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996), constituted governmental functions. We believe the actions of a city and its officials in investigating and disciplining a city police officer accused of criminal activity are likewise encompassed within the rubric of "governmental functions."

A municipality may waive governmental immunity for tort actions by the purchase of liability insurance. N.C.G.S. § 160A-485(a) (1994). However, the purchase of such insurance must be alleged in order for a complaint to set forth a claim against a governmental entity or its officers or employees in their official capacities. *Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 504, 451 S.E.2d 650, 657-58, *appeal dismissed* and *disc. review denied*, 339 N.C. 739, 454 S.E.2d 654 (1995). Notwithstanding presence of the requisite allegation in the instant complaint, defendants contend plaintiff's tort claims are excluded from coverage by the alleged policies of insurance (defendants' policies) underwritten by General Star National Insurance Company (General Star policy) and National Casualty Company (National Casualty policy). *See Dickens v. Thorne*, 110 N.C. App. 39, 44, 429 S.E.2d 176, 179 (1993) (governmental immunity retained for causes of action excluded by insurance policy). These policies were attached to defendants' answer and incorporated therein. *See Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867, *disc. review denied*, 312 N.C. 495, 322 S.E.2d 558 (1984) (attached exhibits become part of the pleadings).

We emphasize defendants' motion was directed at plaintiff's claims against City Manager King, Chief Warshaw, Brown, Jarvis, Stone and Grant, in their *official* capacities. It is well-settled that

an action . . . brought against individual officers in their official capacities . . . is one against the state for the purposes of applying the doctrine of sovereign immunity.

*Dickens*, 110 N.C. App. at 45, 429 S.E.2d at 180 (citations omitted). Thus, while we discuss the propriety of defendants' motion as to the City and the individual defendants in their official capacities, we do not consider plaintiff's claims against Chief Warshaw and Jarvis in their individual capacities.

We address each of plaintiff's eleven claims in turn.

*I. Wrongful Termination*

**[2]** Plaintiff first alleged the City by and through Chief Warshaw terminated plaintiff in consequence of his statements asserting a "double standard" of discipline within the Department. Plaintiff further alleged the City, City Manager King and Chief Warshaw knew or should have known that plaintiff's termination and denial of hearing before the Board "would be . . . violation[s] of the public policy of this state." We affirm the trial court's denial of defendants' motion as to this claim.

We first consider defendants' policies. The General Star policy excludes "[p]ersonal injury arising out of any . . . [t]ermination of employment." The tort of wrongful discharge is thus unambiguously excluded by this policy, and governmental immunity as to that tort was not waived thereunder.

Applicability of the National Casualty policy, however, is less easily resolved. The meaning of specific language used in a policy of insurance is a question of law. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). When language is clear and unambiguous, as in the General Star policy exclusion, a policy provision will be accorded its plain meaning. *Walsh v. Insurance Co.*, 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965). However, when language is subject to more than one interpretation, a policy provision is to be liberally construed so as to afford coverage whenever possible by reasonable construction. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). Further, it is well settled in this jurisdiction that exclusionary provisions are not favored in the law and will be construed against the insurer if ambiguous. *Id.*

Defendants rely on the following section of the National Casualty policy which excludes any claim made against the insured

[f]or any damage arising from bodily injury, sickness, emotional distress, mental anguish, disease or death of any person, or for damage to or destruction of any property, including diminution of value or loss of use thereof.

Defendants argue that an interrogatory response of plaintiff indicated he sought recovery for emotional distress and mental anguish, and that plaintiff's wrongful termination claim is thus excluded under the National Casualty policy. However, consideration of interrogatories by the trial court is not proper in ruling on a motion for judgment on

the pleadings, *see Minor*, 70 N.C. App. at 78, 318 S.E.2d at 867, and the record in any event does not reflect the trial court's consideration thereof in ruling on defendants' motion. We are therefore unpersuaded by this argument.

In addition, defendants have failed otherwise to show how the foregoing provision would operate to preclude plaintiff's claim for wrongful termination. In view of the requirements that insurance exclusions be strictly construed, *State Capital*, 318 N.C. at 538, 350 S.E.2d at 68, and for a judgment on the pleadings movant to show "clear[] entitle[ment]" to a favorable ruling, *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499, we cannot conclude that defendants "clearly" demonstrated lack of waiver of governmental immunity by the City's purchase of the National Casualty policy. The trial court's denial of defendants' motion on plaintiff's wrongful termination claim is therefore affirmed.

## II. Breach of Contract

[3] Plaintiff's second cause of action asserted breach of contract by virtue of defendants' contravention of City policies and ordinances which prohibited termination of a non-probationary employee except for good cause and also provided immediate review of any termination by the Board. We affirm the trial court's denial of defendants' motion as to the City, but reverse the ruling with respect to the individual defendants sued in their official capacities.

Preliminarily, we assume plaintiff's wrongful termination and breach of contract claims to have been advanced in the alternative. Wrongful termination may be asserted "only in the context of employees at will," and not by an employee "employed for a definite term or . . . subject to discharge only for 'just cause.' " *Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 588, 440 S.E.2d 119, 125, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 414 (1994) (citation omitted).

We further note that sovereign immunity does not apply to breach of contract claims. Whenever a sovereign enters into a valid contract, it "implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976). Although *Smith* specifically refers only to contracts entered into by the "State," *id.*, municipal sovereign immunity is attained in derivation of state sovereign immunity. *See* 18 Eugene McQuillin, *The Law of Municipal Corporations* § 53.24, at

310 (3d ed. 1993) ("[a] municipality derives its general tort immunity from the state because it is deemed to act as the state's arm or agent when performing governmental functions"), and 63 C.J.S.2d Municipal Corporations § 746, at 30-32 ("the city in exercising governmental functions does so under delegated powers from the state or as an agency of the sovereign, and acts under the same immunity, if any, enjoyed by the state"). Thus, the rule of *Smith v. State* applies to municipalities.

A viable claim for breach of an employment contract must allege the existence of contractual terms regarding the duration or means of terminating employment. *Tatum v. Brown*, 29 N.C. App. 504, 505, 224 S.E.2d 698, 699 (1976). Plaintiff's complaint addressed this requirement by alleging that the City's charter, ordinances and written policies created an agreement whereby he would not be terminated except for "good cause" and that termination would be subject to review by the Board.

Defendants, citing N.C.G.S. § 160A-16 (1994), respond that, the foregoing allegations notwithstanding, plaintiff fell afoul of the rule that "[a]ll contracts made by or on behalf of a city [must] be in writing" in order to be enforceable. However, plaintiff further specifically alleged the City policies entitling him to a Board hearing were "written." Moreover, as defendants conceded at oral argument, whether the City's charter, ordinances and personnel policies became a part of plaintiff's employment contract would not be an issue properly adjudicated on the pleadings. *See Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986) (unilaterally promulgated employment manuals or policies not part of employment contract unless expressly included therein). Judgment on the pleadings is improper where there exists a material issue of fact, *Hedrick*, 121 N.C. App. at 468-69, 466 S.E.2d at 283, and we therefore affirm the trial court's denial of defendant City's motion as to plaintiff's breach of contract claim.

[4] However, the trial court erred in denying defendants' motion with respect to the individual defendants. The complaint alleged plaintiff was hired by the City for employment as a City police officer, not by any of the individual defendants. *See Sides v. Duke University*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985) (trial court properly dismissed wrongful discharge and breach of contract claims against individual defendants where plaintiff alleged her employment contract was with Duke

University rather than with individual defendants). Accordingly, we reverse the trial court's denial of defendants' motion with respect to the claim for breach of contract against the individual defendants sued in their official capacities.

### III. Libel and Slander

**[5]** Plaintiff next asserted that (1) on or about 27 January 1994, Jarvis prepared and published a memorandum stating plaintiff had engaged in criminal activities and (2) in July 1994, Grant testified before the Iredell County Grand Jury concerning these same criminal accusations. Plaintiff further alleged the actions of Jarvis and Grant and the resulting criminal charges damaged his reputation and constituted libel and slander *per se*. We reverse the trial court's denial of defendants' motion regarding these claims.

The National Casualty policy excludes claims against the insured for libel and slander and thus does not waive governmental immunity. *Dickens*, 110 N.C. App. at 44, 429 S.E.2d at 179. The General Star policy sets out an exclusion for "personal injury" arising out of any "[c]oercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions." This policy further excludes coverage for "[p]ersonal injury" to an "employee of the insured . . . arising out of and in the course of employment by the insured." The definitional section defines personal injury to include "[o]ral or written publication of material that slanders or libels a person."

Allegations in plaintiff's complaint that Jarvis, in his role as a Department supervisor, had prepared and disseminated a memorandum which contained statements defamatory to plaintiff, thus constituted assertion of an employment-related defamation excluded by the General Star policy. Accordingly, governmental immunity was not waived by the City's purchase of that policy, *see id.*, and the trial court erred in denying defendants' motion as to plaintiff's libel and slander claims against Jarvis in his official capacity.

**[6]** With respect to Grant's testimony to the grand jury, we note initially that the parties do not address the obstacles which plaintiff might face in attempting to present evidence in support of his slander claim against Grant should we decide defendants' motion was properly denied as to such claim. *See* N.C.G.S. § 15A-623(e) (1997) (grand jury proceedings secret and "all persons present . . . shall keep its

secrets and refrain from disclosing anything which transpires" during sessions thereof). As defendants' motion was based solely upon the allegations of plaintiff's complaint, we likewise do not discuss this issue.

The law is settled in this jurisdiction that

a defamatory statement made by a witness in the due course of a judicial proceeding, which is material to the inquiry, is absolutely privileged, and cannot be made the basis of an action for libel or slander, even though the testimony is given with express malice and knowledge of its falsity.

*Bailey v. McGill*, 247 N.C 286, 293, 100 S.E.2d 860, 866 (1957).

The public policy and rationale underlying the privilege is grounded upon the proper and efficient administration of justice. 50 Am. Jur. 2d *Libel and Slander* § 299 (1964). Participants in the judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits. *Id.*

In determining whether or not a statement is made in the course of a judicial proceeding, the court must decide as a matter of law whether the alleged defamatory statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding,

*Harris v. NCNB*, 85 N.C. App. 669, 672, 355 S.E.2d 838, 841 (1987), so as to qualify for the privilege. The test for relevancy is generous. *See Scott v. Veneer Co.*, 240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954) ("the matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety"). Further, "judicial proceeding" has been liberally defined, encompassing much more than civil litigation or criminal trials. *Harris*, 85 N.C. App. at 673, 355 S.E.2d at 842. *See, e.g., Scott*, 240 N.C. at 76, 81 S.E.2d at 149 (absolute privilege applies to statements made in pleadings and other papers filed in a judicial proceeding); *Jarman v. Offutt*, 239 N.C. 468, 472, 80 S.E.2d 248, 252 (1954) ("lunacy proceeding is a judicial proceeding within the rule of absolute privilege"); *Harris*, 85 N.C. App. at 674, 355 S.E.2d at 842 (absolute privilege extends to out-of-court communications relevant to proposed judicial proceedings); and *Angel v. Ward*, 43 N.C. App. 288, 293-94, 258 S.E.2d 788, 792 (1979) (absolute privilege applicable to communications in adminis-

trative proceedings where officer or agency exercises quasi-judicial function).

Whether a grand jury hearing constitutes a judicial proceeding within the meaning of the absolute privilege rule appears to be an issue of first impression in this jurisdiction. We are satisfied, however, given the broad definition of "judicial proceeding" and the policy bases supporting the rule of privilege accorded to statements rendered in the course of such a proceeding, that the question is resolved in the affirmative.

We note first that the Restatement (Second) of Torts § 589, comment f (1977), provides that witnesses testifying before a grand jury are afforded absolute immunity. Further, the liberal definition of relevancy sustains the protection of the absolute privilege rule to Grant's statements to the grand jury regarding plaintiff's alleged criminal conduct. We therefore reverse the trial court's denial of defendants' motion regarding plaintiff's slander claim against Grant.

### IV. Malicious Prosecution and False Arrest

[7] Plaintiff's fourth claim for relief maintained the City, with the knowledge and intentional actions of City Manager King, Chief Warshaw and Jarvis, caused criminal charges to be brought maliciously against plaintiff without probable cause and with the intent to intimidate plaintiff into withdrawing or dismissing his declaratory judgment action. Plaintiff further alleged said charges were terminated in plaintiff's favor.

The National Casualty policy specifically excludes coverage for "false arrest" and "malicious prosecution," thereby preserving the defense of governmental immunity as to those claims. We therefore turn to the General Star policy.

Defendants argue the exclusion therein of personal injury "arising out of and in the course of employment" and for claims against "an insured for acts of another officer or employee unless said officer or employee is also insured for said acts in a policy of insurance issued by us" applies to plaintiff's malicious prosecution and false arrest claims, which are thereby precluded by governmental immunity. We cannot agree.

As stated above, exclusionary provisions are not favored in the law and will be strictly construed in favor of coverage. *State Capital*, 318 N.C. at 538, 350 S.E.2d at 68. Both exclusions relied upon by

defendants appear contingent upon plaintiff having been employed at the time of the complained injury.

The first provision excludes claims "arising out of and in the course of employment." Nowhere in the policy is this phraseology defined. However, the American Heritage Dictionary (1982) indicates the term "in the course of" means duration. *See Insurance Co. v. Insurance Co.*, 266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966) (definitions contained in "standard, nonlegal dictionaries may be a more reliable guide to the construction of an insurance contract than definitions found in law dictionaries"). The provision, then, would apply to personal injuries occurring within the duration of employment, or during the employment of the complainant. The second provision, excluding claims for "acts of *another* officer or employee," likewise suggests the injury must have occurred while plaintiff was an employee so as to have been injured by "another" employee.

It is undisputed that plaintiff was terminated 28 January 1994. His complaint alleged Grant testified before the grand jury at least four times between February 1994 and June 1994. Further, it is uncontradicted that plaintiff was arrested 13 July 1994. Thus, the events constituting the injuries as alleged in the complaint occurred at a time when plaintiff was no longer in the employ of the City. Accordingly, any injury alleged by plaintiff may not fairly be characterized as having occurred "in the course of employment" so as to be excluded under the General Star policy, and defendants have otherwise failed to demonstrate their "clear" entitlement to judgment on the pleadings. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d 499. We therefore affirm the trial court's denial of defendants' motion as to plaintiff's malicious prosecution and false arrest claims.

### V. *Negligent Supervision and Negligent Retention*

[8] Plaintiff claimed the City was negligent in exercising its supervisory responsibilities. He contends the National Casualty policy provides coverage for this claim and that no exclusion applies, except as to emotional distress. Plaintiff separately alleged the City knew or should have known of "the alleged actions and inactions" of its supervisory employees in the Department, and that the City's negligent retention of such supervisors was a proximate cause of plaintiff's damages. We analyze these separate claims jointly in the interest of judicial economy and affirm the trial court's ruling with respect to each.

Defendants assert that plaintiff's negligent supervision and negligent retention claims are excluded under the General Star policy's exclusion for personal injury arising out of and in the course of employment by the insured, and that governmental immunity was not waived by the City's purchase of that policy. We do not disagree and therefore proceed to consider the provisions of the National Casualty policy.

Defendants rely on the National Casualty policy exclusion for claims

[a]rising out of operational law enforcement functions and activities including the operation of adult and juvenile detention facilities.

However, this exclusion is ambiguous as applied to the facts *sub judice.*

First, the terminology "operational law enforcement functions" is nowhere defined in the policy. Moreover, the phrase in context suggests connection with the operation of institutional facilities. Further, we again note that ambiguity in a contract of insurance is to be resolved in favor of the insured. *Durham City Bd. of Education v. National Union Fire Ins. Co.*, 109 N.C. App. 152, 156, 426 S.E.2d 451, 453, *disc. review denied*, 333 N.C. 790, 431 S.E.2d 22 (1993). This is especially true where, as here, the ambiguity occurs in an exclusion; exclusions are not favored in the law and are to be strictly construed to provide coverage otherwise afforded by the policy. *Id.* Defendants have therefore failed to show there is no material issue of fact and that they are clearly entitled to judgment as a matter of law on plaintiff's claims of negligent supervision and negligent retention. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.

Defendants' further argument that these claims are excluded from coverage by National Casualty's exclusion "[f]or any damage arising from . . . emotional distress," and that governmental immunity thus was not waived, is similarly unpersuasive. Defendants repeat their assertion that plaintiff seeks damages for emotional distress as evidenced by plaintiff's interrogatory responses. We reiterate that interrogatories are not properly considered by the trial court in ruling on a motion for judgment on the pleadings, *see Minor*, 70 N.C. App. at 78, 318 S.E.2d at 867, and the record in any event fails to reflect the trial court's consideration thereof on defendants' motion.

### VI.  *Violations of 42 U.S.C. § 1983*

**[9]** Plaintiff's complaint also asserted, pursuant to 42 U.S.C. § 1983 (§ 1983), violation of his civil and constitutional rights by denial of the right to immediate appeal of his termination to the Board as provided in the charter, ordinances and policies of the City. Plaintiff's claimed violations fell under two headings, due process and compelled statement; however, it is unnecessary to address each individually. Likewise, we need not address defendants' policies in discussing these claims.

Municipalities enjoy no immunity from suit, either absolute or qualified, under § 1983. *Hawkins v. State of North Carolina,* 117 N.C. App. 615, 625, 453 S.E.2d 233, 238-39 (1995). However, a municipality may not be held liable under § 1983 unless a municipal policy or custom caused the constitutional injury. *Id.* at 625, 453 S.E.2d at 239. Plaintiff herein has failed to allege he was harmed pursuant to a custom or policy of the City, and plaintiff thus has asserted no viable § 1983 claim against the City.

In addition, a § 1983 claim against local government officials is essentially an alternative way of pleading such action against the local governmental entity itself. *Morrison-Tiffin,* 117 N.C. App. at 503, 451 S.E.2d at 657. Because plaintiff has not alleged he was injured pursuant to a custom or a policy of the City, his § 1983 claim must also fail as against the defendants in their official capacity. *Id.* Accordingly, we reverse the trial court's denial of defendants' motion with respect to plaintiff's § 1983 claims.

### VII.  *Violations of N.C.G.S. § 160A-168*

**[10]** Plaintiff also alleged Warshaw and Jarvis published information from the Internal Affairs investigation to certain officers in Statesville, to the Department and to the Charlotte/Mecklenburg Police Department in violation of N.C.G.S. § 160A-168 (1994). Without turning to defendants' policies, we note the statute specifies violation thereof to be criminal, *i.e.,* a "misdemeanor," G.S. § 160A-168 (e) and (f), and authorizes fines of no more than $500 in the discretion of the court upon conviction. Plaintiff insists the section creates a civil cause of action when neither the language of the statute nor any case law cited by plaintiff interpreting the statute so provide. *See also Lenzer v. Flaherty,* 106 N.C. App. 496, 514, 418 S.E.2d 276, 287, *disc. review denied,* 332 N.C. 345, 421 S.E.2d 348 (1992) ("claim against defendant employees [of Department of Human Resources] individu-

ally for monetary damages under N.C.G.S. § 122C-66(b)," which provides as misdemeanor punishable by fine the failure to report abuse of patients in facilities licensed under Chapter 122C, properly dismissed because the "statutory provision is criminal in nature and does not create the sweeping remedy urged by plaintiff"). The trial court's denial of defendants' motion as to plaintiff's claim under G.S. § 160A-168 is therefore reversed.

## VIII. Blacklisting

[11] Plaintiff further asserted Chief Warshaw intentionally interfered with plaintiff's employment opportunities by written and oral publication of false and erroneous information in violation of N.C.G.S. § 14-355 (1993).

The section authorizes a cause of action for "penal," that is, punitive, see Black's Law Dictionary 1019-20 (5th ed. 1979), damages only. See Seward v. R.R., 159 N.C. 241, 252, 75 S.E. 34, 38 (1912) (historical purpose of provision for penal damages in section is difficulty of proof of compensatory damages). However, punitive damages may not be recovered against a municipality absent statutory authorization, Long v. City of Charlotte, 306 N.C. 187, 208, 293 S.E.2d 101, 115 (1982), which G.S. § 14-355 fails to provide. Further, because a cause of action against an officer in his official capacity is essentially a claim against the City, plaintiff likewise may not seek punitive damages from Chief Warshaw in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 121 (1985) ("[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). The trial court therefore erred in denying defendants' motion as to plaintiff's claims against defendants based upon G.S. § 14-355.

## IX. Civil Conspiracy

[12] Finally, plaintiff's complaint alleged the individual defendants, as employees of the City, conspired to deprive him of his employment, to deprive him of a Board hearing and to bring criminal charges against him. We believe the trial court erroneously denied defendants' motion as applied to this claim.

Plaintiff correctly states that a civil conspiracy claim consists of an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, which agreement resulted in injury to the plaintiff. Stewart v. Kopp, 118 N.C. App. 161, 165, 454

S.E.2d 672, 675, *disc. review denied*, 340 N.C. 263, 456 S.E.2d 838 (1995). However, "[a] municipality as such may not ordinarily be a party to a conspiracy." 18 McQuillin § 53.13 at 222; *see also Charlton v. City of Hialeah*, 188 F.2d 421, 422 (5th Cir. 1951) ("[i]t is easy to understand how officers exercising the authority delegated to a town or city might, in their individual capacity, be a party to a conspiracy; but a municipal corporation, which is limited by law to the purposes and objects of its creation . . . cannot in its sovereign or municipal capacity be a party to a conspiracy"). Plaintiff's complaint contained no allegation the asserted conspiracy fell outside the general rule. Similarly, because a claim against persons in their official capacities is essentially one against the state for purposes of applying governmental immunity, *Dickens*, 110 N.C. App. at 45, 429 S.E.2d at 180, such persons in their official capacities also cannot ordinarily be parties to a conspiracy. We therefore reverse the trial court's denial of defendants' motion on this claim.

Prior to concluding, we note plaintiff's brief discusses twelve claims for relief. The twelfth claim was added in an amended complaint allowed by order entered 6 September 1996 and filed 9 September 1996. The instant appeal is from denial of defendants' motion in an order entered 3 September 1996 and filed 6 September 1996. Plaintiff's twelfth claim thus was not before the trial court at the time of the order from which defendants appeal. Arguments addressed to that claim therefore are not properly before us, and we do not address them.

To summarize, the trial court's denial of defendants' motion with respect to plaintiff's claims of wrongful termination, breach of contract against the City, malicious prosecution, false arrest, negligent supervision and negligent retention is affirmed. Denial of the motion regarding plaintiff's claims of breach of contract against the individual defendants sued in their official capacities, and against defendants for libel and slander, violation of § 1983, violation of G.S. § 160A-168, blacklisting and civil conspiracy is reversed.

Affirmed in part, reversed in part.

Judges GREENE and WALKER concur.