**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEWEL A. FARLOW,
              *Plaintiff-Appellant,*

v.

WACHOVIA BANK OF NORTH
CAROLINA, N.A.,
              *Defendant-Appellee.*

No. 00-2251

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-98-479-1)

Argued: April 5, 2001

Decided: August 6, 2001

Before WIDENER and LUTTIG, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Widener wrote the opinion, in which Judge Luttig and Judge
Smith joined.

## COUNSEL

**ARGUED:** Nancy Pulliam Quinn, THE QUINN LAW FIRM,
Greensboro, North Carolina, for Appellant. Mack Sperling,
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD,

L.L.P., Greensboro, North Carolina, for Appellee. **ON BRIEF:** James P. Hutcherson, Vice President and Counsel, Legal Department, WACHOVIA BANK OF NORTH CAROLINA, N.A., Winston-Salem, North Carolina, for Appellee.

---

## OPINION

WIDENER, Circuit Judge:

Jewel A. Farlow (Farlow) appeals the district court's dismissal of her discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* (1994 & 2000 Supp.), because she was not an employee of Wachovia Bank of North Carolina (Wachovia). We affirm the judgment of the district court as to Title VII, and we remand to the district court with directions Farlow's state-law claims.

### I.

Farlow graduated from law school in 1988. Wachovia subsequently employed her to represent it, while she was an associate in a Greensboro, North Carolina law firm. In February 1991, Farlow went into private practice in Greensboro, and she continued to keep Wachovia as a client. In 1993, Farlow and Wachovia discussed the possibility of Farlow working as in-house counsel for Wachovia to handle recovery and bankruptcy cases.

On October 5, 1993, Farlow completed a Wachovia employee application form in which she disclosed that she was convicted of two counts of misdemeanor larceny in 1982. Those convictions made it unlawful for her to become an employee of Wachovia without Federal Deposit Insurance Corporation (FDIC) approval.[1] Farlow was aware

---

[1] 12 U.S.C. § 1829 (a)(1) (1989 & 2000 Supp.) states:

(a) Prohibition

(1) In general

Except with the prior written consent of the Corporation—

of this statute and knew that she could not become an employee unless Wachovia received a waiver from the FDIC.[2]

The parties nonetheless proceeded with their working relationship, and Farlow moved on-site with Wachovia in Winston-Salem where she worked from March 1994 to December 1994. When she moved on-site, Farlow closed her private office in Greensboro in March 1994. The parties subsequently entered into a written contract executed on September 19, 1994[3] for legal services for Wachovia in

---

(A) any person who has been convicted of any criminal offense involving dishonesty or a breach of trust, or money laundering or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense, may not—

(i) become, or continue as, an institution-affiliated party with respect to any insured depository institution;

(ii) own or control, directly or indirectly, any insured depository institution; or

(iii) otherwise participate, directly or indirectly, in the conduct of the affairs of any insured depository institution; and

(B) any insured depository institution may not permit any person referred to in subparagraph (A) to engage in any conduct or continue any relationship prohibited under such subparagraph.

[2]Farlow specifically stated:

They could not officially, quote, put me on the payroll or officially give me any benefits until that FDIC waiver. They could not do that . . . . I mean, they couldn't make it on their record that I was an employee until the FDIC waiver.

Wachovia could not officially put me on the books or have it known that I was an employee there until that waiver came through.

[3]This contract was placed in the record with an affidavit of Kenneth W. McAllister, a senior vice president and general counsel of Wachovia. The affidavit stated that McAllister had personal knowledge of the mat-

bankruptcy, debt collection and such matters that provided that Farlow was an independent contractor.[4] It was the intent of the parties that Farlow would not be considered an employee unless the FDIC waiver was obtained. At oral argument, we were told without refutation that a waiver was never sought for Farlow. Wachovia never sent her an official offer letter detailing her position, salary, and benefits. Wachovia did not keep a personnel file on her, and Farlow never completed federal and state withholding forms, a fidelity bond application, the Form I-9 (an immigration status form), a form acknowledging receipt of Wachovia's Code of Conduct, or the supplemental personal data form listing contact and other information that all Wachovia employees complete and that would be contained in the personnel file. Additionally, during that 10-month relationship with Wachovia, she continued to work with clients obtained from her sole practice as well as to take on new, non-Wachovia clients.

The money paid to Farlow by Wachovia was reported to the Internal Revenue Service (IRS) with a 1099 form rather than a W-2 form.[5]

---

ters contained in the affidavit, which would make it comply with Fed. R. Civ. P. 56(e). The contract is signed by one G. Jerry Venable, an officer of the bank, and by the plaintiff, Farlow, and is dated September 19, 1994, some months after Farlow moved her office into the bank building. In her deposition, Farlow freely admits signing the contract but then, remarkably, states that "To the best of my knowledge" the bank did not execute the contract until after she was "no longer employed by Defendant," this in an apparent effort to avoid the consequences of the contract. Because Rule 56(e) requires supporting and opposing affidavits to be "made on personal knowledge," as the record stands in this case, the contract was signed by Wachovia and Farlow on September 19, 1994, as it shows on its face.

[4]This contract for legal services recites that "Wachovia desires to retain the services of the Attorney as an independent, professional contractor . . . ." Article I states that "Wachovia hereby engages the Attorney as an independent professional." Article 2(F) states that "The Attorney shall in no way be considered or act in such manner so that she might be considered to be an employee or an agent of Wachovia. . . ." Article 6 states that "The Attorney will not be considered an employee of Wachovia or any of its subsidiary companies for any purpose."

[5]Form 1099 is used for reporting the income of non-employees, and the W-2 form is used for reporting the income of employees.

She was never paid a salary during her 10 months there; while employees are paid twice monthly, she was paid for the bills she submitted. She did not receive business cards, and the letterhead she used designated that she was merely an Attorney-at-Law. Farlow was, however, provided with on-site office space, support staff, equipment, the use of company vehicles, and was paid for continuing education matters. Wachovia also exercised control over the hours that she had access to her office. Farlow did not receive benefits such as paid vacation, long-term disability insurance, business travel and accident insurance, life insurance; nor did she partake in Wachovia's retirement savings and profit-sharing plan, or its common stock purchase plan.

After working at Wachovia for a period of months, Farlow complained about a sexually and racially hostile work environment. She was terminated, effective December 21, 1994. Upon termination, Farlow submitted a request for payment for her services while employed there. Wachovia paid part of the request.

Farlow subsequently filed suit in North Carolina state court on May 1, 1998. The Complaint alleged four causes of action: 1) under Title VII of the Civil Rights Act of 1964, the creation of a racially and sexually hostile work environment and Title VII retaliation; 2) failure to pay wages due; 3) punitive damages; and 4) a request for injunctive relief. Wachovia removed the case to the Middle District of North Carolina based on federal question jurisdiction. Wachovia filed an answer, which denied that Farlow was an employee, and counterclaimed for a return of money paid to her. Farlow filed an answer to the counterclaim. Discovery was bifurcated to address initially Farlow's employment status. At the close of discovery, Wachovia filed a Motion for Summary Judgment, and on August 31, 2000, the district court dismissed her claims in entirety because she was not an employee. Farlow timely appealed.

## II.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and review a district court's grant of summary judgment *de novo*. See *United States v. Kanasco, Ltd.*, 123 F.3d 209, 210 (4th Cir. 1997). The moving party must demonstrate the absence of a genuine issue of material

fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). We consider the facts in the light most favorable to the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The facts with respect to the employment relationship are not materially in conflict. Resolution of factors as "to whether an employment relationship or an independent contractor relationship was created" is "a question of law." *Cilecek v. Inova Health Systems Servs.*, 115 F.3d 256, 261 (4th Cir. 1997). Merely because employee and independent contractor status is each supported by certain factors does not bar entry of summary judgment. Whether a person is an employee depends on the common law of agency definition of employee. *Cilecek*, 115 F.3d at 259, 261-63.

Farlow appeals the district court's grant of summary judgment to Wachovia on her Title VII claim and argues she was employed by Wachovia. Wachovia argues that Farlow was merely an independent contractor and thus Title VII is not applicable. Each side concedes that Title VII only applies if Farlow was an employee of Wachovia.[6] See 42 U.S.C. § 2000e(f) (defining "employee" as "an individual employed by an employer"); *Cilecek*, 115 F.3d at 263. The Supreme Court has outlined several factors that a court should consider to determine whether a party is an employee or independent contractor:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of

---

[6]Neither party disputes that Wachovia is within the definition of employer under Title VII. See 42 U.S.C. § 2000e(b).

employee benefits; and the tax treatment of the hired party.
No one of these factors is determinative.

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (citations and footnotes omitted). We recently applied these factors in *Cilecek* and added that the parties' beliefs regarding the nature of the employment relationship are significant. See 115 F.3d at 259-63.

The district court methodically addressed each of the *Reid* factors and counted factors in favor of Farlow when they were unclear. For our purposes here, we highlight several of the more pertinent factors implicated by the facts of this case. The touchstone inquiry enunciated in *Reid* addresses the degree of the "hiring party's right to control the manner and means by which the product is accomplished." *Reid*, 490 U.S. at 751. The degree of control considers the degree of control of the professional services rendered rather than "'peripheral, administrative details which were incidental to the rendering of . . . services.'" *Robb v. United States*, 80 F.3d 884, 889 (4th Cir. 1996) (quotations omitted). In this case, Farlow has not presented evidence suggesting that she was under the direct control of any Wachovia supervisor regarding the performance of her professional services. Farlow stated that her non-lawyer supervisor, Jerry Venable, "did not tell me what the law was." Indeed, this conduct was consistent with the language of the contract for legal services Farlow signed, "Wachovia shall not exert any control, direction, or supervision over the Attorney with regard to the manner, details, or means through which she renders such services."

Farlow has, however, presented evidence that she was required to attend staff meetings, comply with a dress code, and told the hours that her office was available. Although she was required to comply with these administrative details suggesting she was an employee, the lack of oversight in the actual rendering of her skilled, professional services weighs in favor of finding that Farlow was an independent contractor despite the administrative oversight. See *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 218-19 (6th Cir. 1992). However, as we noted in *Cilecek*, if the nature of the profession, such as medicine, or in this case, the law, mandates less control by supervisors, this lack of control may not be as significant in this context as it

would be in other service relationships. See *Cilecek*, 115 F.3d at 260. Thus, we also look to other more relevant factors outlined below.

We next consider the source of the instrumentalities and the location of work under *Reid*. In general, when equipment is furnished during a working relationship and work is done on-site, these facts tend to favor an employment rather than independent contractor relationship. See *Kirk v. Harter*, 188 F.3d 1005, 1009 (8th Cir. 1999). Farlow contends that she was provided with a car and a Wachovia computer[7] on the Wachovia premises to do her work. Wachovia also provided Farlow with administrative assistants.[8] These facts suggest that Farlow was an employee, although we note that independent contractors at Wachovia often are provided with equipment and office space during their working relationship. On the other hand, Wachovia did not provide Farlow with other identifying marks that would normally be provided to employees, such as business cards, letterhead, and malpractice insurance. Despite the ambiguity on this factor, we will count it toward finding that Farlow was an employee.

We next address the duration of the working relationship. The duration of the relationship of the parties, when viewed in the context of the written contract signed by Farlow in this case, suggests an independent contractor relationship was intended by the parties. See *Cilecek*, 115 F.3d at 262 ("[T]hat the relationship was an enduring one might suggest the regularity inherent in an employment relationship."). Prior to working on-site, Farlow worked remotely for several years for Wachovia, which clearly suggests an independent contractor relationship. When she moved on-site, she worked a total of 10 months for Wachovia. This duration, coupled with the move to Wachovia's premises, is some indication that an employment relationship was intended. However, in *Cilecek*, we held that the parties'

---

[7]There is a dispute about whether Farlow's or Wachovia's computer was used by Farlow. We assume, for purposes of the motion for summary judgment, that Wachovia provided Farlow with a computer.

[8]Wachovia provided temporary assistants to Farlow because she expressed concerns about Wachovia employees providing services on matters involving her other non-Wachovia clients. In addition, the contract for legal services stated that she should hire her own assistants.

actual understanding of their working relationship is another factor to consider in this determination. See 115 F.3d at 261.

Importantly, the facts of this case suggest that Farlow knew she could not be an employee of Wachovia without FDIC approval because of her past criminal history. In this regard, she knew that no waiver was in fact granted, and she signed a contract for legal services that repeatedly indicated her status as an independent contractor. Wachovia's actions upon Farlow's employment are consistent with this understanding: no offer letter was sent and no personnel file was created or maintained for Farlow. Although the intent may have been to have her ultimately become an employee, the facts show that this could not occur until an FDIC waiver was obtained. Thus, we place great weight on the actual understanding between the parties and find that this factor weighs heavily in favor of treating Farlow as an independent contractor.

We also note, especially, that Wachovia did not preclude Farlow from representing former clients and from gaining new, non-Wachovia clients during her time working with Wachovia. For a lawyer, this clearly signifies the lack of an in-house counsel, or employment, relationship. The contract for legal services Farlow signed provided that she could represent other clients. Moreover, the record reflects that Farlow did have an active practice, representing more than 30 clients, during the time period she worked with Wachovia, and she admitted that she took on new clients during the 10-month relationship with Wachovia. Wachovia does not permit its lawyer employees to represent outside clients. These facts also strongly suggest that Farlow was an independent contractor rather than an employee. See *Cilecek*, 115 F.3d at 261 (addressing whether employer had the right to "preclude the [alleged employee] from working at other facilities or for competitors").

The *Reid* Court also highlighted several factors relating to the financial relationship between the parties including the tax treatment of the worker, employee benefits, and how the worker was paid. We hold that these financial factors are significant in determining a worker's status. See *Aymes v. Bonelli*, 980 F.2d 857, 863 (2d Cir. 1992) (stating that "every case since *Reid* that has applied the test has found the hired party to be an independent contractor where the hiring party

failed to extend benefits or pay social security taxes"). The failure of an employer to extend employment benefits or to pay any payroll taxes is "highly indicative" that the employee is an independent contractor. *Aymes*, 980 F.2d at 862. A party's tax and benefit treatment can be "virtual admissions" of the party's status. See *Aymes*, 980 F.2d at 862. In addition, the "absence of regular, periodic payments is an indicia of independent contractor status." *Kirk v. Harter*, 188 F.3d 1005, 1008 (8th Cir. 1999).

In this case, Wachovia did not withhold taxes from Farlow's pay and did not pay Social Security tax thereupon. Significantly, as noted, it reported her earnings to the IRS on a Form 1099 rather than the W-2 form, and Farlow herself candidly admitted that she was self-employed to the IRS on the relevant tax returns. Moreover, Farlow did not receive paid vacation, long-term disability insurance, business travel and accident insurance, life insurance, partake in Wachovia's retirement savings and profit-sharing plan, or its common stock purchase plan. She did not even have a checking account at Wachovia, which Wachovia requires of its employees. Additionally, she was not paid weekly, bi-weekly, or on any schedule as other employees are paid; rather, she submitted bills for hours worked based on a $41 per-hour-rate after over 10-months of work and was paid in response to those bills. These facts are quite significant regarding her status as an independent contractor rather than an employee, and we place great weight on them.

Upon review of all of these factors, it is clear that, although some may weigh in favor of a finding that Farlow was an employee, the vast majority of them, including the most significant, weigh in favor of the conclusion that Farlow was an independent contractor. We place greater weight on: 1) the financial relationship between the parties in which she was paid not a salary but only in response to her bills, for services actually rendered; 2) the financial relationship between the parties in which Wachovia did not withhold or pay any taxes that are incident to an employment relationship; 3) the financial relationship between the parties in which Farlow did not receive employee benefits such as medical and life insurance; 4) Farlow's filing of income tax returns under a self-employed status; 5) the express intent of the parties as indicated in the contract Farlow signed labeling her as an independent contractor; 6) that Farlow did not work exclu-

sively for Wachovia during her working relationship with it; and (7) that Wachovia exercised no control over the manner of her work. These factors demonstrate that Farlow exercised independence from Wachovia. Although Wachovia did provide Farlow with instrumentalities such as a computer and did exercise control over some administrative details incident to her on-site work, such as monitoring her dress code, supplying some support staff, and controlling the hours she could use her office, when balanced against the clear intent of the parties and the striking economic realities surrounding the working relationship in this case, we conclude that the district court was correct, as a matter of law, in holding that Farlow was an independent contractor for Wachovia, and not its employee. We thus affirm that aspect of the decision of the district court.

### III.

We next address Farlow's claim that the district court erred in dismissing her state-law claims. The judgment of the district court dismissed the case in its entirety, which would have included the state-law claims, and under Rule 41(b) of the Federal Rules of Civil Procedure, such dismissal would have been a decision on the merits. The district court, however, had not considered the state-law claims, so the dismissal of them on the merits was error for that reason.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the predecessor of 28 U.S.C. § 1367, the 1990 statute with respect to supplemental jurisdiction, the Court, although not denying the right of the district court to decide pendent claims, stated that "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726. Following *Gibbs*, the Court decided in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988), that, in a case in which the federal claims had been deleted from the complaint by the plaintiff, before trial, following a removal from a state court, the district court had the discretion to remand the pendent state-law claims to the state court.

The upshot of applying *Gibbs*, *Cohill* and § 1367 to this case is that on remand, the district court has the discretion either to dismiss the pendent state-law claims without prejudice, remand the state-law

claims to the state court, or decide the merits of the state-law claims if it believes it should not follow the statement we have quoted from *Gibbs*.

The counterclaim of Wachovia, which was filed after removal, being based solely on the ground of excessiveness of fees charged, is a state-law claim. If the district court should elect to decide the pendent or supplemental claims, it should dispose of, in that proceeding, the counterclaim also. If the district court elects to remand the case to the state court, it should dismiss the counterclaim without prejudice prior to the remand so that Wachovia may reassert the same in the state court should it be so advised. Should the district court elect to dismiss the state-law claims, that dismissal should be without prejudice.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*