**Leslie ATKINS, Plaintiff,**

v.

**COMPUTER SCIENCES
CORPORATION
Defendant.**

No. CIV.A.02–1498–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 19, 2003.

Jennifer A. Hess Smith, Charlson Bredehoft PC, Reston, VA, for Plaintiff.

Gregory Scott Lewis, Morgan Lewis & Bockius LLP, McLean, VA, Christine Bannon Cox, Morgan Lewis & Bockius LLP, Washington, DC, Robert John Smith, Morgan Lewis & Bockius LLP, McLean, VA, for Defendant.

## MEMORANDUM OPINION

JONES, United States Magistrate Judge.

Plaintiff has sued defendant on claims of *quid pro quo* sexual harassment, hostile work environment harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (2001). The matter is before the court on defendant's motion for summary judgment, which has been fully briefed and argued. Because undisputed facts show that plaintiff was not an employee of defendant for purposes of Title VII, the court lacks jurisdiction and defendant is entitled to summary judgment on that ground. Alternatively, the court finds that defendant is entitled to summary judgment on the *quid pro quo* sexual harassment and hostile work environment harassment claims, but not as to the retaliation claim.

### I. *Undisputed Facts*

The following facts are undisputed.

Defendant Computer Sciences Corporation ("CSC") is a major provider of information technology to commercial and government markets. Defendant's P2 Communications Services ("P2"), located in defendant's Falls Church, Virginia office, functions essentially as an internal publication and marketing communications service for defendant's business units.

Defendant hired plaintiff Leslie Atkins, an experienced communications professional, in August 2000 as a Transitions Communications Lead at P2 on a particular project ("the Nortel Project"). Plaintiff was engaged to work on the Nortel project as an "independent contractor" and she received a contractor's badge. Plaintiff negotiated and was paid an hourly rate of $100 and was paid only for hours actually worked. Defendant did not provide fringe benefits for plaintiff, such as health insur-

ance, pension, or 401(k) participation. Defendant did not withhold taxes on plaintiff's pay, and sent plaintiff only 1099 forms, not W–2 forms for tax purposes. On her tax returns, plaintiff listed all of her income in 2000 and 2001 as "business income" rather than as wages. Plaintiff's e-mail address while she worked for defendant was "Leslie Atkins/DEF/SUBCONTRACTOR/CSC @CSC.COM." Defendant paid plaintiff by disbursement checks issued to "Leslie Atkins Communications." Defendant never told plaintiff that she was restricted from working with other clients while providing services to defendant.[1]

When plaintiff completed work on the Nortel Project in November, 2000, she was offered and accepted an assignment to work as a Transition Communications Lead on another project, the St. Vincent's Catholic Medical Center Project ("the St. Vincent Project"). The St. Vincent Project was put on hold in early January 2001, but was expected to begin shortly. In the interim, the director of P2, Cecilia Wloczewski, gave plaintiff other work. The St. Vincent Project remaiñed on hold through February and March 2001, and plaintiff continued to work on various projects at P2 under the direction of Ms. Wloczewski and Susan Hunnicutt, Senior Manager of Marketing Communications in P2.

On March 16, 2001, plaintiff met with Rolfe Schroeder, the Vice President of Human Resources, and complained that Ms. Hunnicutt was sexually harassing her. Plaintiff had a follow up meeting with Mr. Schroeder later that month. Plaintiff was terminated on March 20, 2001.

## II. *Procedural History*

Plaintiff alleged hostile work environment harassment, *quid pro quo* sexual

harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, and filed her Motion for Judgment in Fairfax County Circuit Court on August 9, 2002. Defendant removed the action to this court on October 8, 2002. The parties consented to the jurisdiction of a magistrate judge, and an order of reference was entered on December 9, 2002. Defendant filed its motion for summary judgment on March 7, 2003 on the grounds that, (1) plaintiff was an independent contractor, and therefore, cannot bring suit under Title VII, and (2) plaintiff's claims are without merit.

## III. *Findings*

For the reasons discussed below, the court finds that: (1) defendant is entitled to summary judgment as a matter of law because plaintiff was an independent contractor and the court therefore lacks jurisdiction; (2) assuming jurisdiction, defendant is entitled to summary judgment on plaintiff's claims of *quid pro quo* sexual harassment and hostile work environment harassment in violation of Title VII; and (3) assuming jurisdiction, defendant is not entitled to summary judgment on plaintiff's retaliation claim.

## IV. *Legal Standards*

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On a motion for summary judgment, the court must first consider whether there are any issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

---

**1.** Plaintiff contends that in fact she did not work for other clients during the relevant period.

2505, 91 L.Ed.2d 202 (1986). In determining whether the moving party has shown that there is no genuine issue of material fact, the court must assess the factual evidence and all inferences must be drawn in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

 Title VII prohibits employers from discriminating against employees based on gender regarding terms, conditions, or privileges of employment. 42 U.S.C. § 2000e–2(a)(1) (2001). Title VII protects only employees, and not independent contractors. *See* 42 U.S.C. § 2000e–3, e(b), and e(f); *Cilecek v. Inova Health System Services,* 115 F.3d 256, 258 (4th Cir.1997); *Farlow v. Wachovia Bank of North Carolina,* 259 F.3d 309, 313 (4th Cir.2001). As discussed further below, "employee" status is not determined by any one fact such as tax treatment of plaintiff's income. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). However, plaintiff bears the burden of demonstrating that she is an employee of an employer under Title VII because she bears the burden of proving that subject matter jurisdiction exists. *See, e.g., Bryant v. Clevelands, Inc.,* 193 F.R.D. 486, 487 (E.D.Va.2000).

Title VII prohibits discrimination against employees based on gender regarding terms, conditions, or privileges of employment. Gender discrimination claims are traditionally categorized into two varieties: (1) sexual harassment that creates a hostile work environment, and (2) sexual harassment where sexual favors are demanded in exchange for job benefits (i.e. *quid pro quo* sexual harassment). *See Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 771 n. 3 (4th Cir.1997). In order to prevail on a claim of employment discrimination, plaintiff bears the ultimate burden of proving the employer intentionally discriminated against her. *See, e.g., St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

## V. *Analysis*

### A. Plaintiff's Status as an Independent Contractor

The Supreme Court held in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) that:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business for the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party...No one of these factors is determinative.

*Id.* at 751–52, 109 S.Ct. 2166.

 General principles of common law agency guide a determination of employee versus independent contractor status in Title VII cases. *Cilecek v. Inova Health System Services,* 115 F.3d 256, 259–260 (4th Cir.1997).

In *Farlow v. Wachovia Bank of North Carolina,* 259 F.3d 309, 313 (4th Cir.2001), the Fourth Circuit recognized that the

*Reid* factors cannot be applied mechanistically, and that some are more significant than others. The *Farlow* court placed "great weight" on the actual understanding between the parties that the plaintiff was an independent contractor. *Id.* at 315. In reviewing the remaining *Reid* factors, the court found some "most significant" in relation to the others:

> We place greater weight on: (1) the financial relationship between the parties in which she was paid not a salary, but only in response to her bills, for services actually rendered; (2) the financial relationship between the parties in which Wachovia did not withhold or pay any taxes that are incident to an employment relationship; (3) the financial relationship between the parties in which Farlow did not receive employee benefits such as medical and life insurance; (4) Farlow's filing of income tax returns under a self-employed status; (5) the express intent of the parties as indicated in the contract Farlow signed labeling her as an independent contractor; (6) that Farlow did not work exclusively for Wachovia during her working relationship with it; and (7) that Wachovia exercised no control over the manner of her work.

*Id.* at 316.

Plaintiff asserts that although she was hired by defendant as an independent contractor, the relationship with defendant changed over time. She contends that she became an "employee" of defendant for Title VII purposes because while the St. Vincent Project was on hold, defendant exerted a degree of control over her work and her work product that was inconsistent with "independent contractor" status. However, the *Reid* factors, as applied by the Fourth Circuit in *Farlow*, require a finding of independent contractor status when applied in this case.

It is undisputed that: (a) defendant and plaintiff regarded plaintiff as an independent contractor, as evidenced by correspondence between the parties, plaintiff's e-mail address, plaintiff's standard client forms, and the issuance of a contractor's badge to plaintiff; (b) plaintiff was never paid a salary, but always and only in response to her bills for services rendered; (c) plaintiff was paid at a rate far higher than the compensation paid to high-level employees and managers; (d) defendant did not withhold or pay any taxes that are incident to an employment relationship, but instead issued 1099 forms to both plaintiff and the IRS; (e) plaintiff did not receive fringe benefits from defendant, such as health insurance, pension, or 401(k) participation; (f) plaintiff filed her income tax returns under a self-employed status, listing all such income as "business" income rather than wages on her 2000 and 2001 tax returns; and (g) defendant did not restrict plaintiff from performing work for other clients.

In fact, evidence indicating that plaintiff was an independent contractor is stronger here than in *Farlow*. Despite plaintiff's subjective feeling that her relationship with defendant had changed, the only *Reid* factor weighing in her favor is the fact that defendant did exercise more control over her work product in the interim before the St. Vincent Project began. This one factor is heavily outweighed by the other *Reid* factors listed above that indicate she was an independent contractor.

The court therefore finds that defendant is entitled to summary judgment as a matter of law because plaintiff was an independent contractor.

### B. Plaintiff's Hostile Work Environment Claim

The Fourth Circuit has held that to prove a claim of hostile work environment,

plaintiff must show that: (1) the subject conduct was unwelcome; (2) the conduct was based on plaintiff's sex; (3) the conduct was sufficiently severe or pervasive to create an abusive work environment; and (4) there is some basis for imposing liability on the employer. *See Spicer v. Virginia,* 66 F.3d 705, 710 (4th Cir.1995).

Plaintiff claims that from early December 2000 until her termination in March of 2001, her direct supervisor, Susan Hunnicutt, engaged in conduct that constituted sexual harassment toward plaintiff, including one instance where Ms. Hunnicutt pressed her breasts against plaintiff; several instances where Ms. Hunnicutt grabbed plaintiff in a full body hug that plaintiff described as brutal and unwelcome; several instances where Ms. Hunnicutt required plaintiff to stay for private after hours meetings; and one instance where Ms. Hunnicutt exposed her thighs to plaintiff in a manner plaintiff considered "suggestive."

However, the court finds that under the standard set by Fourth Circuit precedent, plaintiff has not created a genuine issue of material fact that the alleged harassment was: (1) based on plaintiff's gender, and (2) sufficiently severe or pervasive to create an abusive work environment.

### 1. Basis on Gender

■■■ A plaintiff can establish that she has been harassed because of her gender when "but for" her gender she would not have suffered the discrimination that occurred. *See Wrightson v. Pizza Hut of America,* 99 F.3d 138, 142 (4th Cir.1996).

The Fourth Circuit recognizes three ways for a plaintiff to establish that conduct complained of occurred because of her gender, as required for a hostile work environment claim: (1) evidence that the behavior amounted to "earnest sexual solicitation;" (2) a showing that the alleged harasser has general hostility toward people of that gender in the workplace; or (3) direct comparative evidence of treatment of men versus women. *See Lack v. Wal–Mart Stores, Inc.,* 240 F.3d 255 (4th Cir. 2001); *English v. Pohanka of Chantilly, Inc.,* 190 F.Supp.2d 833, 843 (E.D.Va. 2002); *see also Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).[2]

■■ Plaintiff does not allege that Ms. Hunnicutt had a general hostility toward people of plaintiff's gender in the workplace, nor does plaintiff allege that Ms. Hunnicutt engaged in disparate treatment of women versus men. Plaintiff relies only on the argument that Ms. Hunnicutt's behavior amounted to "earnest sexual solicitation." Plaintiff claims that Ms. Hunnicutt engaged in inappropriate conduct, including full body hugs, pressing her breasts against plaintiff, demanding after hours meetings, and exposing her thighs to plaintiff, but plaintiff does not claim that Ms. Hunnicutt ever made sexually-oriented comments to her or directly propositioned her for sexual favors. There simply is no evidence here of "solicitation."[3] Therefore, the court finds that plaintiff has not created a genuine issue of material

**2.** Defendant asserts incorrectly that the Fourth Circuit places a higher burden on plaintiffs who allege same-sex harassment. The language in *Hopkins v. Baltimore Gas & Electric,* 77 F.3d 745, 752 (4th Cir.1996) relied on by defendant reflected the views from only one member of the panel.

**3.** Moreover, the conduct complained of in this case is distinguishable from conduct found by the Fourth Circuit and this court to be based on the plaintiff's gender. *See e.g. Wrightson, supra,* 99 F.3d at 140; *Tietgen v. Brown's Westminster Motors, Inc.,* 921 F.Supp. 1495, 1503 (E.D.Va.1996).

fact that the alleged harassment was based on her gender.

### 2. Severity and Pervasiveness

The Supreme Court in *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) recognized that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."

■ In determining whether harassment is sufficiently severe or pervasive, the court should consider: (1) the severity of the action; (2) its frequency; (3) whether it was physically threatening or humiliating; and (4) whether it unreasonably interfered with plaintiff's work. *See Hopkins v. Baltimore Gas and Electric Company,* 77 F.3d 745, 753 (4th Cir.1996).

The court assumes that the conduct complained of occurred as described by plaintiff. At best, Ms. Hunnicutt's conduct is comparable to that in *Hopkins v. Baltimore Gas and Electric Company,* 77 F.3d 745 (4th Cir.1996), and *Kouri v. Liberian Services, Inc.,* 1991 WL 50003 (E.D.Va. 1991), aff'd 960 F.2d 146 (unpub.), where the Fourth Circuit and this court found that conduct was not sufficiently severe or pervasive enough to create a hostile work environment. Arguably, Ms. Hunnicutt's conduct, even if it occurred as alleged, is less offensive than the conduct the Fourth Circuit found unactionable.

In *Hopkins,* the plaintiff alleged that his supervisor bumped into him, positioned a magnifying glass over his crotch, and gave him a congratulatory kiss in the receiving line at his wedding. The Fourth Circuit found that the conduct was "tasteless and inappropriately forward," but not sufficiently severe or pervasive. 77 F.3d at 753–54. In *Kouri,* plaintiff alleged that her supervisor gave her unsolicited back rubs and stood in close proximity to her. This court found that the conduct was not severe or pervasive enough to create a hostile work environment, emphasizing that the alleged harasser did not make any sexual remarks or references. 1991 WL 50003 at *7.[4]

■ Drawing all inferences in the light most favorable to the plaintiff and applying the law of this Circuit, the court finds that the alleged harassment was not based on plaintiff's gender and was not sufficiently severe or pervasive to create a hostile work environment.

### C. Plaintiff's *Quid Pro Quo* Sexual Harassment Claim

To establish a claim of *quid pro quo* sexual harassment, plaintiff must show that (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual advances; (3) the unwelcome conduct was based on sex; and (4) her reaction to the conduct affected tangible aspects of her employment. *See Spencer v. General Electric Company,* 697 F.Supp. 204, 216–217 (E.D.Va.1988).

■ Plaintiff claims that Ms. Hunnicutt made unwelcome sexual advances toward her and implied that plaintiff's rejection of these advances would endanger her

---

**4.** Furthermore, the conduct complained of in this case is significantly less severe and pervasive than conduct found by this court to create a hostile work environment. For instance, in *Ecklund v. Fuisz Technology, Ltd.,* 905 F.Supp. 335, 337 (E.D.Va.1995), the plaintiff alleged that her co-worker repeatedly stroked her hair and body, hugged and forcibly kissed her, partially undressed in front of her, made explicit comments about sexual acts to her, and made sexual jokes and comments to her. This court found that the conduct was sufficiently severe and pervasive to create a hostile work environment.

job. In support of this allegation plaintiff claims that in March 2001, Ms. Hunnicutt scheduled a meeting with plaintiff, but kept rescheduling the meeting for later in the day. When plaintiff refused to stay and meet with Ms. Hunnicutt, plaintiff alleges that Ms. Hunnicutt told her that if she left, she should not come back.

This allegation, even if true, does not present a genuine issue of material fact as to *quid pro quo* sexual harassment. Plaintiff's subjective beliefs are not evidence. There is no evidence that Ms. Hunnicutt's unwelcome advances were based on plaintiff's sex. Nor is there any showing that Ms. Hunnicutt's request that plaintiff stay and meet with her was in any way sexual in nature. *See Kouri, supra,* 1991 WL 50003 at *8 (holding that plaintiff could not show *quid pro quo* harassment because she did not allege that her supervisor ever made any express or implied offers for sex in exchange for a promotion or raise). Finally, plaintiff does not establish that Ms. Hunnicutt had the authority to terminate plaintiff's working relationship with defendant. *See Ecklund, supra,* 905 F.Supp. at 339 (holding that a *quid pro quo* claim fails where the alleged harasser does not have the power to grant or withhold job benefits to the plaintiff).

Therefore, the court finds that defendant is entitled to summary judgment on plaintiff's *quid pro quo* sexual harassment claim.

### D. Plaintiff's Retaliation Claim

The Fourth Circuit has held that to establish a *prima facie* case of unlawful retaliation under Title VII based on an individual's opposition to an unlawful practice, the plaintiff must prove that: (1) she engaged in protected activity under Title VII; (2) she suffered some adverse employment action; and (3) there is a sufficient causal connection between the pro-

tected activity and the adverse action. *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001).

■ It is undisputed that plaintiff's complaints of sexual harassment constitute protected activity. In the circumstances presented here, the court finds genuine issues of material fact regarding: (1) whether arbitrarily changing plaintiff's project deadlines constitutes an adverse employment action, and (2) whether there is a causal connection between plaintiff's complaints and her termination, due to conflicting evidence in the record.

First, plaintiff alleges that Ms. Hunnicutt arbitrarily changed her project deadlines because plaintiff rejected Ms. Hunnicutt's advances. Defendant argues that this allegation does not involve a cognizable adverse employment action and thus, plaintiff has failed to present a *prima facie* case of unlawful retaliation. However, as discussed below, defendant advances plaintiff's supposed inability to meet her deadlines as one of the justifications for her termination. Therefore, on defendant's own theory of the case, modification of project deadlines was causally connected to plaintiff's termination, which is an adverse employment action. Ms. Hunnicutt's actions and their motivation are therefore material and disputed.

Second, plaintiff alleges that she was terminated as a result of her complaints of sexual harassment. Defendant argues that plaintiff cannot demonstrate a causal connection between the termination and her complaints. Defendant concedes that plaintiff first complained to Mr. Schroeder about sexual harassment on March 16, 2001, that she had a follow up meeting on either March 19 or 20, and that she was terminated on March 20. However, defendant contends that the decision to termi-

nate plaintiff predated her complaints to Mr. Schroeder.

Defendant claims that the Director of P2, Cecilia Wloczewski, decided to terminate plaintiff on March 14, 2001 because plaintiff failed to meet her deadlines for the end of the fiscal year (April 1, 2001) and because the St. Vincent Project was put on hold indefinitely. Plaintiff argues that she attempted to complaint to Ms. Wloczewski about Ms. Hunnicutt's conduct in February 2001, but was rebuffed.

When the resolution of an issue is based on witness credibility, summary judgment is not appropriate. *See Gray v. Spillman,* 925 F.2d 90, 95 (4th Cir.1991); *United States v. Burgos,* 94 F.3d 849, 868 (4th Cir.1996) (en banc) (holding that the fact finder must determine the credibility of witnesses and resolve conflicting testimony, not the reviewing court); *see also Garrett v. Langley Federal Credit Union,* 121 F.Supp.2d 887, 909 (E.D.Va.2000). Here, the timing and content of several conversations is not just material, but potentially dispositive. There is sufficient conflict about interwoven events, and sufficient need for a fact finder to resolve credibility issues, to preclude summary judgment on the retaliation claim. Therefore, the issue of retaliation is not appropriate for summary judgment on this record.

## VI. Conclusion

For the reasons stated above, the court finds that the submitted pleadings and affidavits establish that defendant is entitled to summary judgment as a matter of law because plaintiff was an independent contractor. Alternatively, the court finds that defendant is entitled to summary judgment on the *quid pro quo* sexual harassment and hostile work environment harassment claims, but not as to the retaliation claim. An order granting defen-

dant's motion for summary judgment accompanies this opinion.