**Roberta MANN, Plaintiff,**

v.

**Mary Jo LIMA, Sovereign Bankcorp, and Sovereign Bank, Defendants.**

C.A. No. 02–088S.

United States District Court, D. Rhode Island.

Oct. 10, 2003.

Eva Marie Mancuso, Bridget E. Chisholm, Hamel, Waxler, Allen & Collins, Providence, RI, for plaintiffs.

Michael A. Gamboli, Michael J. Murray, Partridge, Snow & Hahn LLP, Providence, RI, for defendants.

## DECISION AND ORDER

SMITH, District Judge.

This case requires the Court to apply the law of hostile work environment sex discrimination to allegations of sexual harassment by a female plaintiff against a female supervisor. Defendants Mary Jo Lima, Sovereign Bankcorp, and Sovereign Bank believe that Mann has struck out on her claims, and move for summary judgment. For the reasons that follow, this Court finds that summary judgment is appropriate and Defendants' motion is granted.

## I. Facts

Roberta Mann is a former customer service representative for Sovereign Bank who comes to the plate with allegations that her erstwhile supervisor, Mary Jo Lima, sexually harassed her during the period of June through December 2000.

The allegations of harassment, taken in the light most favorable to the Plaintiff's case, are as follows. In May of 2000, "[Lima] told me that my necklace was pretty and felt the next time I go shopping I should buy one for myself and one for

her." Mann Dep., at 16. Sometime between June and August of 2000, Lima "whispered into my ear over my left shoulder," stating, "I see you have that necklace on, what do I need to do, slide in beside you and take it off?" *Id.* at 23–24. Also between June and August of 2000, Lima again commented to Plaintiff that she should buy two pieces of jewelry the next time Plaintiff went shopping, one for herself and one for Lima. *Id.* at 28. During that time frame, Lima also stated that she should take the necklace off, wrap it up, and give it to Lima for her birthday. *Id.* at 31.

In September of 2000, Plaintiff changed the length and color of her hair. After this change, Plaintiff claims that Lima walked up behind her and ran her fingers through Plaintiff's hair. Lima also made comments about "how pretty it looked and how different it was," all the while rubbing Plaintiff's head "in a massaging motion." *Id.* at 35.

On October 16, 2000, Plaintiff attended a meeting with Lima at Lima's request. The meeting occurred in a closed conference room, and no one else attended. *Id.* at 41. During that meeting, Lima said:

'I feel that you need a hug.' I said, 'MJ [Lima], what are you talking about.' She said, 'I feel you need a hug.' I said, 'MJ, I don't want you hugging me.'. . . . She repeated it again. She said, 'I really think you need a hug.' I said, 'I do not want you hugging me.' [Lima] got up from the table and walked around . . . and I held my hand out . . . and told her, 'I do not want you hugging me.' When I looked over, [Lima] was kneeling in front of me and holding my ankle. . . . [Lima] looked at me and she said, 'I see you have that necklace on. I

want it, give it to me.'. . . . I just sat there, I was a wreck. Then [Lima] said, 'well, let's just forget this ever happened.'

*Id.* at 45–47.

On October 19, 2000, Plaintiff reported the events of the October 16 meeting to Sovereign Bank's human resources department. *Id.* at 52. This was the first time that Plaintiff complained to Sovereign Bank about Lima's conduct toward her.

The next and final incident occurred on December 26, 2000, when "[Lima] sat on my desk and told me how pretty it [Mann's top] was and how she liked the colors on me and how nice it looked on me." *Id.* at 74. The following week, Plaintiff did not come in to work because she could not face Lima. On January 2, 2001, she spoke with Karen Mendonca and Brenda Diko of Sovereign Bank, both of whom had human resources responsibilities, and informed them that she would not be returning to her job. *Id.* at 79–80.

There is also testimony that Lima once stated at a family gathering that she was a lesbian "so her mother would stop trying to fix her up with people," and that Lima recounted this event to Plaintiff. *Id.* at 27. This is the only evidence with respect to Lima's sexual orientation, other than the fact that Lima is presently married to a man.[1]

Defendants pitch extensive evidence that Sovereign Bank investigated Plaintiff's charges, as reported on October 19, 2000; but Plaintiff suggests that this pitch is off the mark because Lima merely received an oral reprimand and no other discipline.

Plaintiff brings claims under 42 U.S.C. § 2000e–2, *et seq.* (Title VII) and R.I. Gen. Laws 28–5–1, *et seq.* (Rhode Island's Fair Employment Practices Act).[2] Defen-

---

**1.** Lima's marital status is irrelevant to the issues in this case.

**2.** It is not disputed that Plaintiff is in the right ballpark; she has complied with all adminis-

dants maintain that Mann strikes out on the following pitches: strike one—Plaintiff's failure to demonstrate that the alleged discriminatory harassment was based on sex; strike two—Plaintiff's failure to offer sufficiently "objectively severe or pervasive" evidence of discriminatory harassment that would change the conditions of her working environment; and strike three—that even if harassment occurred, Defendants absolved themselves of liability by their prompt investigations.

## II. *Summary Judgment Standard*

The rules of this game are well-known and oft repeated. Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, this Court must review the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir.2002); *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1st Cir. 1991); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

To oppose the motion successfully, the non-moving party "may not rest upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the evidence presented by the non-moving party " 'cannot be conjectural or problematic; it must have sub-

stance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' " *Mesnick*, 950 F.2d at 822 (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Therefore, in order to round the bases and defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

## III. *Analysis*

A plaintiff alleging hostile work environment sex discrimination relies, in the first instance, on Congress' pronouncement that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). This proscription has been construed to mean that "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citing *Meritor*

trative prerequisites for filing suit in federal court. *See* Complaint, ¶¶ 4–5.

*Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

■ Thus, a "hostile work environment" sexual harassment claim, like the infield fly rule, is composed of specific elements all of which must be present: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of a plaintiff's employment and create an abusive work environment; (5) that the sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir.2001). Defendants focus the majority of their attack on whether the conduct in this case was "based on sex" and "severe or pervasive."

### A. *"Based on Sex"*

In *Oncale v. Sundowner Offshore Services, Inc.,* the Supreme Court held that the protections of Title VII in the context of a hostile work environment sexual harassment claim encompass situations in which the harasser and victim are of the same sex. 523 U.S. 75, 79–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Writing for the Court, Justice Scalia described three avenues by which a plaintiff in a same-sex hostile work environment case can establish that the alleged discrimination is "because of" or "based on" sex:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* ... because of ... sex.'

*Oncale,* 523 U.S. at 80–81, 118 S.Ct. 998 (emphasis in original).

■ Of the three "evidentiary routes" announced in *Oncale,* Plaintiff purports to avail herself only of the first: that is, she contends that Lima is homosexual, and that the harassment she endured was "based on sex" because based on Lima's sexual desire for her. Plaintiff has not offered evidence that Lima was "motivated by a general hostility to the presence of women in the workplace"; nor has she offered any evidence comparing Lima's treatment of members of both sexes. The second and third evidentiary routes are

therefore inapplicable.[3]

On her chosen theory, however, Plaintiff's presentation is weak, at best. The record is nearly devoid of any evidence suggesting that Lima is a homosexual. Plaintiff points to Lima's statement at a family gathering that she was a lesbian. But the context in which this statement was made could just as likely indicate that she was *not* a lesbian—*i.e.,* that the statement was a canard, or, in Plaintiff's own words, uttered "so her mother would stop trying to fix her up with people."

Plaintiff attempts to bolster this weak proffer by asserting that "[t]he comments and advances made by Ms. Lima were implicitly sexual in nature." Pl. Mem. at 9. Even viewing the evidence in the light most favorable to the Plaintiff's case, this Court finds it very difficult to accept Lima's alleged conduct, the majority of which involved complimentary comments about Plaintiff's clothing, hairstyle, or jewelry, as "credible evidence that [Lima] was a homosexual." *Cf. Dick v. Phone Directories Co., Inc.,* 265 F.Supp.2d 1274, 1279 (D.Utah 2003) (allegations that harassing female co-worker reached into female plaintiff's blouse and pinched her breast, came up behind two other female co-workers and "bodily butt hump[ed]" them, and "rubb[ed] [her foot] up and down" in female co-worker's crotch, did not indicate that harassing co-worker was a homosexual). The Court is mindful that all reasonable inferences must be drawn in favor of the Plaintiff's case at the summary judgment stage. *Rochester Ford,* 287 F.3d at 38. And there is some minimal evidence, consisting of Lima's own statements concerning her sexual preferences as she her-

self relayed them to Plaintiff and limited physical contact, to support an inference, however strained, that Lima is a homosexual. Therefore, motivated by an abundance of caution, the Court finds that Plaintiff narrowly escapes summary judgment on the "based on sex" element.

## B. *"Severe or Pervasive"*

■ "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (citing *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. at 67, 106 S.Ct. 2399). Those factors that bear consideration in assessing the severity or pervasiveness of allegedly harassing conduct include: "the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating, whether the conduct unreasonably interfered with the employee's work performance, and the effect of the conduct on the employee's psychological well-being." *Che v. Massachusetts Bay Transportation Authority,* 342 F.3d 31, 40 (1st Cir.2003).

The district court's role in measuring the severity or pervasiveness of allegedly harassing conduct in the same-sex context again finds expression in *Oncale:*

In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for

---

**3.** This is not meant to suggest that these are the *only* avenues available for a plaintiff to show that the alleged harassment was "because of sex." *See Shepherd v. Slater Steels Corp.,* 168 F.3d 998, 1009 (7th Cir.1999) ("[W]e discern nothing in the Supreme

Court's [*Oncale*] decision indicating that the examples it provided were meant to be exhaustive rather than instructive."). However, Plaintiff does not suggest any theory other than the first evidentiary route described in *Oncale.*

example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

523 U.S. at 81–82, 118 S.Ct. 998.

Thus, in assessing the severity or pervasiveness of the conduct herein at issue, the Court must do its best to judge the "social impact" of the complained-of behavior, applying an "appropriate sensitivity" to the social context of workplace relations between two women, all the while drawing reasonable inferences in favor of the non-movant.

Cases examining the issue of workplace sexual harassment by women against women are about as common as a baseball post-season that includes the Cubs and the Red Sox, particularly when the allegations of harassment involve conduct claimed to be based on sexual desire. Nevertheless, a few courts have conducted a "social impact" inquiry of the kind adverted to in *Oncale* in the female-to-female sexual desire context. *Crespo v. Schering Plough Del Caribe, Inc.*, 231 F.Supp.2d 420 (D.P.R.2002) is perhaps the only case in the First Circuit to have done so. There, a female sales representative brought a Title VII action against her female super-

visor for sexual harassment based on the following acts that the court believed contained "some sexual tint or connotation": the supervisor talked to the plaintiff about her sexual preferences and the private lives of her co-workers; the supervisor told the plaintiff that she would be assigned to a certain customer because the general manager liked the plaintiff's looks; the supervisor frequently "sized up" the plaintiff and asked her where she bought her jewelry; the supervisor told the plaintiff that the plaintiff "sold with her good looks, not with her brains"; the supervisor hugged the plaintiff from behind at a convention and asked the plaintiff to bring her a cookie from a nearby booth; the supervisor told the plaintiff that she was disorganized, and for that reason had not married; and the supervisor commented to plaintiff that she wished she were tall and blonde like the plaintiff. *Id.* at 423–25.

In concluding that the totality of this conduct was legally insufficient, the Court stated:

> Although some of [the supervisor's] comments may have been lacking in professionalism and common courtesy, her conduct as a whole was not the type of conduct that a reasonable person would find hostile or abusive. Rather, it rises only to the level of sporadic abusive language, gender-related jokes, and occasional teasing. Such conduct does not generally create a hostile work environment.

*Id.* at 429 (internal citation omitted).

Two cases in the Eastern District of Virginia further inform the Court's assessment of the facts in this case. The conduct of a female co-worker toward a female plaintiff in *Ecklund v. Fuisz Technology, Ltd.*, 905 F.Supp. 335 (E.D.Va. 1995) included offensive sexual comments and jokes; unwanted touching and stroking of the plaintiff's hair and body; forced hugging and kissing at a company softball

game in front of other employees; and partial undressing in front of plaintiff conjoined with comments about sexual acts. *Id.* at 337.

Without extensive discussion of the "severe or pervasive" requirement,[4] the court concluded that this conduct was sufficiently egregious to survive a motion for summary judgment. The court reasoned that "[h]ad [the harasser] been a male employee and engaged in this type of behavior, there is no question that the plaintiff would have alleged a viable claim under the 'hostile or abusive environment' prong of Title VII." *Id.* at 340.

By contrast, in *Atkins v. Computer Sciences Corp.*, 264 F.Supp.2d 404 (E.D.Va. 2003), the court was faced with the following allegations of harassment of a female communications specialist by her female superior: one instance where the superior pressed her breasts against plaintiff; several instances where the superior "grabbed plaintiff in a full body hug that plaintiff described as brutal and unwelcome"; several instances where the supervisor required the plaintiff to stay for private after-hours meetings; and one instance where the supervisor exposed her thighs to plaintiff in a manner deemed "suggestive" by the plaintiff. *Id.* at 410.

The court found that this behavior was neither severe nor pervasive enough to survive summary judgment, distinguishing it from *Ecklund, id.* at 411 n. 4, and comparing the allegations to those in a Fourth Circuit decision (which did not involve female-to-female harassment) that were also insufficient. *Id.* at 411 (citing *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 753–54 (4th Cir.1996) (allegations that male supervisor bumped into male plaintiff and positioned a magnifying glass over his crotch, and gave him a congratulatory kiss in the receiving line at his wedding, were "tasteless and inappropriately forward conduct," but were not actionable)).

■ Courts in various other cases involving female-to-female sexual harassment have engaged in the type of social impact inquiry called for by *Oncale,* and a detailed perscrutation of each of these is unnecessary.[5] Having surveyed a sampling of cases which fall along the spectrum of allegedly harassing behavior, motivated by sexual desire, by women against

---

4. Since *Ecklund* was a pre-*Oncale* case, most of that court's analysis regarded the viability of a same-sex hostile work environment sexual harassment action under Title VII.

5. *See, e.g., Smith v. County of Humboldt,* 240 F.Supp.2d 1109 (N.D.Cal.2003) (allegations that female co-worker "brush[ed] up" against female plaintiff in the bathroom, hit and pushed plaintiff to get her attention, otherwise touched plaintiff, and tried to sit next to plaintiff at lunch, were insufficiently severe or pervasive); *Pedroza v. Cintas Corp.,* No. 7–01– 3247–CV–S–RED, 2003 WL 828237 (W.D.Mo. Jan.9, 2003) (allegations that female co-worker kissed female plaintiff at least three times, put saliva on plaintiff's cheek, grabbed plaintiff, "rubbed her butt" on a frequent basis, followed plaintiff into her work area, blew kisses at plaintiff on an almost daily basis, and used sexual comments and profanity directed at plaintiff frequently, were insuffi-

ciently severe or pervasive to survive summary judgment); *Huddleston v. Lumbermens Mutual Casualty Co.,* 942 F.Supp. 504 (D.Kan.1996) (allegations that female supervisor entered female plaintiff's office with a portion of her blouse unbuttoned and exposed portion of her breast as she leaned over plaintiff's desk, leaned on plaintiff in her office, and invited plaintiff to engage in social activities with her, did not meet the "severe or pervasive" standard); *Miller v. Vesta, Inc.,* 946 F.Supp. 697 (E.D.Wis.1996) (allegations that female co-worker left notes in female plaintiff's locker that she wished to begin a lesbian relationship with plaintiff, placed a birthday card in plaintiff's locker, followed plaintiff to the restroom, and continually stared at plaintiff at work, were not sufficiently frequent or severe to constitute a hostile or abusive work environment, even though conduct was homosexual in nature).

other women, this Court finds that the Plaintiff's allegations are minor league, and insufficient to demonstrate that the complained-of acts were sufficiently severe or pervasive to withstand summary disposition. However unwelcome, tasteless, inappropriate, and unprofessional Lima's conduct may have been, it was never threatening, nor is there evidence that Mann was ever "intimidated" by it. Moreover, there were only two incidents of unwanted physical contact—a rub of the head and a touch of the ankle—neither of which comes close to being severe enough to be characterized as abusive. *Cf. Oncale,* 523 U.S. at 77, 118 S.Ct. 998 (plaintiff was threatened with rape, "forcibly subjected to sex-related, humiliating actions" by male co-workers in the presence of others, and "physically assaulted ... in a sexual manner"). And none of Lima's comments to Mann may reasonably be deemed sexually abusive or harassing: they consist of a series of compliments and a request for a hug (hugging, although perhaps not commonplace among workplace acquaintances, is not unheard of and one of the more innocuous forms of physical touching). Taken *in toto,* Lima's conduct simply does not rise to the level of severity or pervasiveness that other courts have required in the female-to-female sexual desire context. Consequently, summary judgment is appropriate.[6]

IV. *Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

---

6. Because the Court has disposed of the case for failure to meet the "severe or pervasive" standard, it is unnecessary to consider Defendants' third argument—prompt and effective remedial action—in support of summary judgment.